## BLUNK *v.* ATCHISON, T. & S. F. R. Co.

*(Circuit Court, W. D. Missouri, W. D.*   March 14, 1889.

**1. MALICIOUS PROSECUTION—WHEN LIES.**
If, after the filing of an original complaint for criminal prosecution, those who instituted the prosecution learn facts showing the innocence of the accused, they are not liable for malicious prosecution for merely withholding such information from the prosecuting attorney, as under the statutes of Kansas the case is then in the hands of the attorney; but they are liable if they still insist upon, urge, and demand the prosecution of the accused.

**2. SAME—MALICE—WHAT CONSTITUTES.**
Where there is a wanton, gross, reckless disregard of the rights of another in instituting a prosecution, as where confessedly there is no excuse for it,—no reasonable ground,—the jury may find the prosecution malicious, though there is no direct testimony of prior trouble, ill-will, or grudge.

**3. SAME—PROBABLE CAUSE.**
Where robbery and murder have been committed, and those affected thereby, on being informed by a convict in a penitentiary that he, with certain others, committed the crimes, find on investigation that the details of the facts stated by their informant are substantially true, and from the confession and verification of the details they entertain an honest and strong suspicion that the persons named were guilty, probable cause exists for prosecution of those implicated by the statement of the convict.

**4. SAME—ADVICE OF COUNSEL.**
If one injured by a crime discloses all the facts that he knows, or that by the exercise of reasonable care he can obtain, honestly and fully to counsel, and the latter advises that such facts make out a case for prosecution of suspected persons, the injured person is justified in instituting the prosecution.[1]

**5. SAME—RIGHTS OF ACCUSED.**
The suspected persons need not be informed or led from the investigations to believe, before the prosecution is instituted, that they are accused of the crimes.

**6. SAME—DAMAGES.**
The measure of damages for malicious prosecution is the expense of the defense, the value of the time lost by the accused, and a reasonable compensation for injury to reputation.

At Law.

Action by F. A. Blunk against the Atchison, Topeka & Santa Fe Railroad Company, for damages for malicious prosecution.

*Robinson & Harkless,* for plaintiff.

*Geo. W. McCrary* and *Gardener Lathrop,* for defendant.

BREWER, J., *(orally charging jury.)*   The case, which has been tried before you with very full detail of facts, is one of importance, not merely to the parties involved here, but also to the general public, and by reason of that fact it deserves at your hands the most careful consideration. Both sides have presented the testimony fully and fairly; and it certainly is a pleasure to try a case when it is tried, as this has been, so well, and so pleasantly, by counsel.   At the very outset I want to notice and

---

[1] Respecting advice of counsel as showing probable cause, and the necessity of disclosing all material facts to counsel, as a defense to an action for malicious prosecution, see Paddock v. Watts, (Ind.) 18 N. E. Rep. 518; Cuthbert v. Galloway, 35 Fed. Rep. 466; Norrel v. Vogel, (Minn.) 38 N. W. Rep. 705, and note.

comment for a moment upon an obvious infirmity in our laws—at least, so it strikes me. One of you is entirely innocent of crime. Some one files a complaint; causes your arrest; you are tried and acquitted. In making your defense you have spent time and money; possibly have been incarcerated in jail; and yet, after your perfect vindication, by a jury of your countrymen, there is no provision for any compensation to you for the time and money that you have lost. Now, as I have often had occasion to say, I think that this is an injustice; but it is an injustice that we cannot remedy—only the legislature can. The only remedy which a party may have, in a case where he has been unjustly charged with a crime, is when the prosecution is one which comes within the legal definition of a malicious prosecution; and then he can recover from the prosecutor fair and reasonable damages.

In this case I may have occasion to comment upon the testimony somewhat, and I may express an opinion as to the effect of this or that portion of testimony, or as to the proof of this or that fact. If I do so, I want to say at the outset that my opinion upon a question of fact does not control. You are to decide all questions of fact. And I want to say another thing, too, and that is, that we are to try this case upon the testimony that we have, and not upon that which might have been, or that we guess might have been, offered. If a witness known to have some connection with the circumstance of this case is not present, you may not guess that he would have testified so and so if he were present. Our inquiry is limited to the testimony that we have, and we cannot speculate upon what might have been.

I observe again that we are not here to try the question of the guilt or innocence of this plaintiff of the train robbery and murder at Coolidge. That is not the question before us. If it were, I think I should have no hesitation in saying that, conceding all that you may in reference to suspicions, there are no sufficient facts before you that would justify you in saying that he was connected with that robbery. I observe again that the proceedings which were initiated by the complaint filed before the justice of the peace, followed up by the requisition and information, are at an end. That prosecution is finished. Again, if not conceded, it is, I think, a fact beyond dispute from the testimony that the prosecution of this plaintiff, Blunk, was initiated by the defendant railroad company. It caused, practically, those proceedings to be commenced and prosecuted. And in that respect I may also observe that when a crime like the attempted robbery of the train at Coolidge, and the murder of the engineer and the wounding of the fireman, has been committed, then common decency and every man's sense of justice demands that the company whose property has thus been threatened, and whose employe has thus been killed, should make every fair and reasonable effort to bring the criminal or criminals to justice; and that it is not to be taken as any evidence of misconduct on the part of the railroad company that it has used its employes and spent its money in an effort to ferret out and bring to justice the criminals. Every man, for that matter, owes a duty to society to do what he can to ferret out and punish crime; and when the

relations exist that existed between this defendant and the man who was killed, there is a more imperative duty on it to do what it can in that direction.   While that is true, of course it also is true that in prosecuting its inquiries and making its efforts it is not at liberty to act wantonly, to act with malice, to act in disregard of the rights of others.   All that it may do,—and it is that which it ought to do,—is to make fair and reasonable efforts to ferret out and prosecute the criminals.

It being, therefore, not a question of whether that prosecution is ended, nor a question whether this plaintiff was guilty of the crime charged in that prosecution, the inquiry naturally arises, what is this case, and what is it that you are to try?   In the technical language of the law, this is a case in which the defendant is charged to have maliciously prosecuted this plaintiff—"maliciously prosecuted;" and the elements of the case, as well settled, are—*First*, it must appear that there was no probable cause existing at the time of the commencement of the prosecution for its commencement; and, *secondly*, that it was a prosecution with malice.   Those are the two ingredients.   As frequently stated, there must be a want of probable cause, and there must be malice.   Those are the questions you are to try—whether in this prosecution this railroad was actuated by malice towards this plaintiff, and acted without any probable cause to believe him guilty.   The question of what constitutes probable cause is a question for the court to settle.   What the facts are the jury are to determine; but what constitutes probable cause is for the court to determine.   It appears in this case that, without any solicitation or any suggestion from the defendant, news was communicated to the officers of the company that a convict in the Missouri penitentiary knew something about the Coolidge train robbery, and was ready to confess.   On the strength of that information the ordinary officer of the defendant proceeded to the Missouri penitentiary, and interviewed that convict.   From him he got a statement in writing, written partly by the agent of the company and partly by the convict.   That statement, according to the testimony, was a confession of his own—that is, the convict's own—connection with the crime.   More than that, it detailed the circumstances immediately preceding and subsequent to the crime; named the three parties engaged in it, and detailed some preliminary matters, then mapped out their course of travel to Coolidge and return, giving individual facts connected therewith.   Now, I say to you that if a reputable citizen —if one of you, or any man of known integrity—makes an affidavit in which he details his own knowledge of a crime, and a person acts upon that affidavit, he acts with probable cause in instituting a prosecution for the offense.   But where a person like this convict, of confessed criminality,—confessed both by the adjudication against him and by his own confession in this statement,—makes a statement in respect to crime, not merely in reference to himself, but implicating others, then common prudence requires that the truth of that statement should be investigated before the persons named in it are charged with crime.   If, however, in a confession from a man himself a convict,—from a man confessing his own criminality and charging others with participa-

tion,—the confessor makes a detailed statement of facts preceding, attending, and following the crime, and the party to whom that confession is made investigates those particular statements, and finds that they are substantially accurate, and acts upon that information thus verified by personal investigation and information, he is acting upon probable cause. Take the case before us. If Mr. Higgins—after receiving this statement, which has been read to you, detailing the place from which they started, the prior relationships between the convict, Mr. Blunk, and Mr. Waller, the places they visited on their way to Coolidge, what took place at Coolidge, the places they visited in the vicinity of Coolidge and on the return—if Mr. Higgins, taking that statement as presented to him, implicating the convict himself, and Mr. Blunk and Waller, went over and verified so far as was possible the details of the information thus conveyed, and found that the details were correct,—details which could not have been known except by a party who was cognizant of the offense and participated in the crime,—then he is justified in acting upon that confession as a true statement, or at least as probable cause for further prosecution. In this respect I quote the language of a case cited by the counsel for plaintiff from Cole v. 'Curtis, 16 Minn. 182, (Gil. 161,) itself a quotation from Hil. Torts:

"Probable cause for instituting a prosecution is held to be such a state of facts known to and influencing the prosecutor as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, upon the facts within the party's knowledge, to believe or entertain an honest and strong suspicion that the person accused is guilty."

Now, if the defendant, through its agent, after this investigation, with this sworn statement of the convict, found that the details of the facts therein stated were substantially true, and from the possession of that knowledge—that is, from the possession of the confession and the verification of the details by personal examination—entertained an honest and strong suspicion that the convict and the persons named as assistants with him were the three guilty persons, then the action was with probable cause, and the plaintiff has failed to make out his case.

It is not necessary, where an investigation of this kind is started, that the persons suspected or accused should, before the prosecution is instituted, be notified of the accusation. It is not even necessary that the persons investigating the matter should so far continue their investigations as to put the accused upon notice of an investigation, or lead him to believe that an investigation is being had; because, for the obvious reason that, if he be guilty, the moment he knows or suspects that an investigation is being had, he disappears. Those investigations are fairly and reasonably conducted if they are conducted up to the point where the possibility of notice to the accused may arise.

It is also necessary, in a case of this kind, that the defendant in the civil action—one pending like this—shall have acted maliciously. A satisfactory definition of that term may not be easy. Of course, it covers a case where a prosecutor has an ill-will against the accused; as if, for instance, I had a personal grudge against one of you, and should, by

reason of that personal grudge, file a complaint against you.   There you can see that I have malice,—I have ill-will,—a grudge.   But the law goes a little further than that.   It is not always necessary to prove such personal, actual ill-will and grudge by reason of past trouble.   A jury may sometimes infer from the absence of any probable cause that there was malice, even where the testimony fails to show any prior trouble, difficulty, ill-will, or grudge.   Wherever there is a wanton, a gross, reckless disregard of the rights of another, as where confessedly there is no excuse for it,—no reasonable ground,—and a complaint is filed, then, although there may be no direct testimony as to any prior trouble, ill-will, or grudge, the jury may be justified in finding that the action was malicious.   But, while that is true, yet the jury must be satisfied from the testimony that the thing was maliciously done.   In this case the question for you to consider in this respect is whether this railroad company, or any of its officials, had any feeling, any malice, any desire to prosecute or punish this plaintiff.   Was it to wrong or injure him in any way that this prosecution was instituted?   Or was it simply from the belief— a belief, mistaken though it may be, that he was the guilty man?   If they acted from probable cause, and without any personal feeling towards him, without any desire to wrong him, then there is no malice shown as against the company defendant.

It is further insisted by the defendant that whatever information they had they presented to counsel,—their own counsel, the attorney general of the state of Kansas, and the county attorney of Finney county,—and that all of them agreed that the facts within their knowledge pointed to and justified the prosecution of this plaintiff.   Now, if a party in a case like this discloses all the facts that he knows, or that by the exercise of reasonable care he can obtain, honestly, fully, and fairly, to counsel, and that counsel advise him that the facts thus stated make out a case, then he is justified in acting upon that advice.   Thus, for instance, one of you may suspect that A. has committed a crime.   You make inquiries,— all that come within your power reasonably to make,—and you find this fact, and that, and another, and you go to the prosecuting attorney, and tell him these facts, and he says they indicate that the person is guilty of crime, and on the strength of that you file a complaint.   The matter is investigated, the case is tried, and it turns out that you were mistaken, and that the defendant is innocent.   No cause of action arises against you. You have gone to the proper party; you have told him all that you know, and all that by the exercise of reasonable care and diligence you could ascertain; and, having made that disclosure, although you were mistaken, although perhaps his advice was incorrect, yet you are shielded from liability.   Now, this defendant says that all it knew, all the facts within its knowledge, and all that it could with reasonable care ascertain, were communicated to its own counsel, to the attorney general, and to the county attorney of Finney county.   Not merely that; it says that the attorney general, on his own motion, went and investigated, so far as he could, by conversation with the confessor and convict, the accusation; and that they all advised that there was enough to justify the commence-

ment of the prosecution. If that be true, if nothing was withheld, if full disclosure was made, if all was done honestly, conscientiously, and fairly, and all the facts that the company did have within its knowledge, or could by the exercise of reasonable care ascertain, were disclosed to these counsel, and they advised the prosecution, that is a perfect answer to this suit.

On the other hand, it is insisted by the counsel for the plaintiff that, whatever may have transpired before the original filing of the complaint at Garden City by Mr. Black, after that was filed months elapsed before the information was filed upon which the plaintiff was finally to be tried, and that the defendant company in the *interim* between the original commencement and the filing of the information, if it did not have before, had full and satisfactory information of the innocence of this plaintiff, and that, notwithstanding that information, it insisted upon the continuance of the prosecution, and caused the information to be filed. The law in that respect is this: By the statutes of Kansas, whenever a criminal complaint is filed, the county attorney takes charge of the prosecution. From that time until its termination in the trial court it is wholly within his control. It does not lie in the mouth of the person who makes the complaint to say what shall be done, or when it shall be done, thereafter. The law provides that, after the filing the complaint before the justice of the peace, the preliminary examination and binding over for trial in the district court, at or before the commencement of the next term of the district court, the county attorney shall investigate the matter. If he finds satisfactory reasons for discontinuing it, he shall file a statement of those reasons with the judge of the district court, who determines the propriety of continuing the prosecution. If he finds no such satisfactory reasons for its discontinuance, then it is his duty to file the information; and the moment the criminal proceeding is initiated by the filing of the complaint, the matter from that time remains absolutely in the control of the county attorney, except as he may be directed by the district court. So that the mere fact that after the prosecution was initiated the railroad company was advised of matters which showed the innocence of the plaintiff—that itself would not justify you in holding the railroad company responsible in this case; that is, provided it was not responsible for the original filing of the complaint. It is true, however, that while the absolute control of the case remains with the county attorney, if, after the filing of the original complaint, the original prosecutor—in this case the railroad company—becomes advised of facts which clearly show the innocence of the accused, and, notwithstanding the possession of the knowledge of those facts, it insists, and urges, and presses the prosecution of the case further, it may held liable. Its silence, its mere withholding the information, its mere waiting and letting the case take its course, give no cause of action against it; but if it insisted upon, and urged and demanded, a continuance of the prosecution when it knew that the party was innocent, then it may still be liable for an action of malicious prosecution. But in order to prove that it must be shown that it was fully advised of the innocence of the accused, and

that, notwithstanding its full possession of information in that respect, it insisted upon, urged, and demanded the prosecution of the accused. Now, in this case the question is whether there was any such information communicated to the railroad company; whether there was anything more than a doubt thrown upon what information had been received before; and whether, in the possession of such information as it had, the continuance of the prosecution was at its urgency and insistence.

If you find for the plaintiff, the question of course arises, what is his measure of damages? and in respect to that the law is this: Whatever he may have paid out for counsel fees, for expenses in defending himself against the suit that was wrongfully brought against him, and whatever may be the value of the time that was consumed in that defense; and, beyond that, whatever damage may have been done to his reputation by the initiation and prosecution of this unjust charge,—are to be considered in determining the amount of his damages. Of course, so far as the amount of money he may have paid out for expenses and counsel fees is concerned, that is a matter easy of calculation, as is also the value of his time. Those are matters of mathematical calculation. So far as the question of injury to his reputation—damages to his reputation—is concerned, there is no mathematical rule by which that can be determined. It is submitted to the good sense and fair judgment of the jury,—considering all the circumstances of the case, the man he is, his past life, his own character,—to determine as to how much he has been damaged by this unjust accusation.